UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Brandon Griffith,                  :
        Plaintiff,                 :
                                   :
     v.                            :      File No. 2:05-CV-126
                                   :
Robert Hofmann, Vermont            :
Department of Corrections,         :
Vermont Probation                  :
Department, Jay Simons,            :
Deb Thibault, Celeste              :
Girrell, Scott Morley,             :
        Defendants.                :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 15)

Plaintiff Brandon Griffith, a Vermont inmate

proceeding *pro se* and *in forma pauperis*, brings this

action pursuant to 42 U.S.C. § 1983 claiming that the

defendants have violated his constitutional rights.

Specifically, Griffith alleges that his parole release

was wrongfully delayed, that he was given no medication

for the days immediately following his release, and that

while incarcerated he was placed in administrative

segregation and denied basic rights.  The defendants have

moved to dismiss, asserting, *inter alia*, official

capacity immunity, lack of personal involvement, and

qualified immunity.  The defendants also argue that they

had no duty to provide Griffith with medication upon his

release and that a failure to provide medication does not constitute an Eighth Amendment violation.  For the reasons set forth below, I recommend that the defendants' motion be GRANTED in part and DENIED in part, and that Griffith be granted leave to amend his complaint.

## Factual Background

In his complaint, Griffith first claims that he was "paroled since 9/21/04" but that "my paperwork was never filed."  (Paper 5 at 5).  In a subsequent filing, Griffith expands on this allegation, stating that "I was granted parole 9/21/04 . . . . I submitted my address to Head Caseworker Scott Morley and my paperwork was never filed . . . .  My paperwork was not submitted until 2/4/05."  (Paper 17 at 2).  The substance of this claim appears to be that Griffith's release on parole was wrongfully delayed.

Griffith next alleges that he was released in December, 2004 without medication to treat his manic depression and with "no means of support."  (Paper 5 at 5).  Griffith claims that he was taking Wellbutrin and Prozac while incarcerated, and that under "DOC policy you are suppose[d] to receive a 7 day trial med supply do

[sic] to your release." (Paper 17 at 1). He further explains that upon his release, he had no insurance and no way of obtaining medication during his "re-introduction into society." Id.

Griffith's third claim is that he was placed in administrative segregation from January 22, 2005 through April 21, 2005. (Paper 5 at 5); (Paper 17 at 3). During that time, he was allegedly denied access to the law library, the canteen, outside recreation and religious services. He claims that he attempted to exhaust the prison grievance process, but that his efforts never resulted in an adequate investigation. (Paper 5 at 2).

Discussion

I.   Motion to Dismiss Standard

On a motion to dismiss, "a court has to consider the legal sufficiency of the claim as stated in the complaint and is not to weigh facts underlying the claim or the merits of the case." Esden v. Bank of Boston, 5 F. Supp. 2d 214, 216 (D. Vt. 1998) (citing Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)). "In ruling on such a motion, the court must look only to the allegations in the complaint and any documents attached to or

incorporated by reference in the complaint." Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999). Morever, the court must assume all well-pleaded factual allegations to be true and draw reasonable inferences in the light most favorable to the plaintiff. See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Dismissal is impermissible unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Flores v. S. Peru Copper Corp., 343 F.3d 140, 148 (2d Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## II.  Official Capacity Immunity

The defendants argue that Griffith's claims are barred by virtue of their immunity from suit in their official capacities. Under the doctrine of sovereign immunity, the Eleventh Amendment bars suits by private citizens against a state or its agencies in federal court unless the state has waived its immunity or Congress has properly abrogated that immunity. See Pennhurst State School  & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984);

Seminole Tribe v. Florida, 517 U.S. 44, 55 (1996).  The
protection of the Eleventh Amendment also extends to
suits for monetary damages against state officers sued in
their official capacities.  See Brandon v. Holt, 469 U.S.
464, 471 (1985).  Moreover, the Supreme Court has held
that, just as states and state agencies are not "persons"
under § 1983, state officers acting in their official
capacities are not "persons" since they assume the
identity of the government that employs them.  See Hafer
v. Melo, 502 U.S. 21, 27 (1991).

     With respect to this case, it is clear that neither
Vermont nor Congress has waived the sovereign immunity
that protects the defendants from a damages action
brought against them in their official capacities.  There
is no indication in 42 U.S.C. § 1983 that Congress
intended to abrogate state sovereign immunity, and the
Supreme Court has specifically held that Congress did not
intend to override well-established immunities such as
state sovereign immunity when it enacted § 1983.  See
Will v. Michigan Dept. of State Police, 491 U.S. 58, 67
(1989).  It is equally clear that Vermont has not waived
its sovereign immunity under § 1983.  See 12 V.S.A. §

5601(g) (Vermont Tort Claims Act reserves Eleventh

Amendment immunity for all claims not explicitly waived).

Therefore, to the extent that the defendants are being

sued in their official capacities for money damages, they

are protected by the State of Vermont's sovereign

immunity and Griffith's damages claims against them

should be DISMISSED.

III.   Failure to Provide Post-Release Medication

The defendants also argue that they had no duty to

provide Griffith with medication after his release from

prison.  Griffith responds that because he was released

on conditional release/furlough status, he remained in

state custody and the state was responsible for his well-

being.  He also claims that it was prison policy to

provide inmates with a seven day supply of medication

upon release.

The defendants concede that Prison Health Services,

the entity with which the Department of Corrections

contracts for the provision of medical services, has a

practice of providing inmates who are released on

supervisory status with a five-day supply of medications.

In order to receive such medication, an inmate must

request it from the health center upon his release.  "If

Plaintiff did not obtain any such medication upon his

release, it is because he failed to go to the health

center to request them."  (Paper 18 at 2 n.2).

     As set forth above, the Court must accept the

allegations in the complaint as true, and cannot consider

facts beyond those contained in the complaint.

Therefore, the Court accepts Griffith's claim that he was

not provided medication, and will not consider whether

Griffith himself bore any responsibility for obtaining

such medication.

     Some courts have held that prisons have an

affirmative duty to provide prisoners with medication

after release.  See Lugo v. Senkowski, 114 F. Supp. 2d

111, 114 (N.D.N.Y. 2000) (citing Wakefield v. Thompson,

177 F.3d 1160 (9th Cir. 1999)).

> The State has a duty to provide medical services
> for an outgoing prisoner who is receiving
> continuing treatment at the time of his release
> for the period of time reasonably necessary for
> him to obtain treatment "on his own behalf."
> See Wakefield, 177 F.3d at 1164.  A parolee just
> having been released after a stay in prison is
> often in no position to immediately find the
> alternative medical attention that he needs.
> The facts as alleged by Plaintiff here support a
> claim that he was unable to obtain the necessary
> treatment "on his own behalf" and that the state

     had a continuing duty to protect him for a
     reasonable amount of time.

Lugo, 114 F. Supp. 2d at 115.  In this case, as in Lugo,

the plaintiff claims that he was unable to obtain his

medication in the days immediately after his release.

Griffith alleges that he had no insurance at the time of

his release, and that establishing health coverage can

take several days.  During that several day period his

manic depression, for which he had been receiving

medication while in prison, went untreated.  Given these

facts, and the case law supporting Griffith's claim,

Griffith should be allowed to argue that the failure to

provide him with medication upon his release was

unconstitutional.

     In order for his claim to survive a motion to

dismiss, however, Griffith must also allege that the

defendants were deliberately indifferent to his serious

medical needs.  See Estelle v. Gamble, 429 U.S. 97, 104

(1976); Farmer v. Brennan, 511 U.S. 825, 828 (1994).  He

must support his claim with evidence that his condition

was so serious that "a condition of urgency, one that may

produce death, degeneration, or extreme pain exists," and

that the defendants were deliberately indifferent to that

condition.  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d

Cir. 1996).  "[T]he official must both be aware of the

facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also

draw the inference."  Farmer, 511 U.S. at 837.  While

simple negligence will not rise to the level of a

constitutional violation, certain instances of

malpractice "may rise to the level of deliberate

indifference; namely, when the malpractice involves

culpable recklessness, i.e., an act or failure to act by

the prison doctor that evinces 'a conscious disregard of

a substantial risk of serious harm.'"  Chance v.

Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (quoting

Hathaway, 99 F.3d at 553).  These principles extend to an

inmate's mental health care needs.  See, e.g., Greason v.

Kemp, 891 F.2d 829, 834 (11th Cir. 1990).

        Griffith alleges that he suffers from manic

depression.  His specific claim of harm is that "having

abrutly [sic] stop taking my meds being a mania

depressive led to my withdrawal of the meds so quick

w/out being drawn off.  Led to my ultimate downfall w/ my

unfocused mind and actions.  Leaving me unstable."

(Paper 17 at 3).   Psychiatric conditions can undoubtedly pose a risk of serious harm.   See Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000).   As this case progresses, Griffith will need to show that the failure to provide him with medicine for a period of days posed a substantial risk of such serious harm.   See Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) (although plaintiff suffered from HIV, "he presented no evidence that the two alleged episodes of missed medication resulted in permanent or on-going harm to his health"); Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.").   Although Griffith's current claims provide only a general sense of the harm presented by his lack of medication, it is conceivable that his condition presented the type of potential harm sufficient to state a claim under the Eighth Amendment. The Court should, therefore, decline to dismiss Griffith's complaint for failure to claim sufficient

harm.

With respect to deliberate indifference, however, Griffith has not identified any of the defendants as having had (1) knowledge of his condition and (2) the ability to either provide him with medication or direct that such medication be provided.  Indeed, it is not clear that any defendants were members of the prison medical staff.  Moreover, even if the defendants had been able to provide Griffith with medication prior to his release, there is no statement in the complaint that any defendants showed a "conscious disregard of a substantial risk of serious harm."  Hathaway, 99 F.3d at 553.

A Court generally should not dismiss a *pro se* complaint "'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).  Here, Griffith may be able to allege additional facts that would raise his allegations to the level of a constitutional claim.  Accordingly, I recommend that the Court grant Griffith 20 days in which to amend his

11

complaint to add facts including, *inter alia*, facts
relating the seriousness of his mental illness, the full
extent of the harm he suffered as a result of inadequate
medication, each defendant's role in his medical care
and/or the supervision of that care, and each defendant's
knowledge with respect to the effects of Murphy's
illness.  Failure to file a timely amendment may result
in the dismissal of Griffith's medication claim.

IV.   Lack of Personal Involvement

     The defendants next claim that Griffith's
allegations are barred for failure to allege sufficient
personal involvement.  While the factual claims in the
defendants' memorandum pertain primarily to Commissioner
Hofmann, the defendants assert in a footnote that this
defense applies to each of them.  (Paper 15 at 5 n.1).
With respect to Hofmann, Griffith alleges that "I've yet
to receive a notice from the Commissioner why [I] am
still ad seg.  It [is] in the due process rights of ad
seg that I be let known a decision from the Commissioner
after 60 days what is my status.  There has been nothing
like that."  (Paper 5 at 7).  Griffith also alleges that
he presented his issues to Hofmann through the grievance

process, and that "[t]he Commissioner is the head of corrections and if some injustice is being imposed by the powers under him it is within his duty to correct or investigate claims."  (Paper 17 at 2).

"*[R]espondeat superior* cannot form the basis for a § 1983 claim."  Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998).  The personal involvement of a supervisory defendant in a § 1983 claim may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  Mere "linkage in the prison chain of command" is

insufficient to implicate a state commissioner of

corrections in a § 1983 claim.  Ayers v. Coughlin, 780

F.2d 205, 210 (2d Cir. 1985).  Furthermore, the fact that

a prison official passed upon a grievance by referring it

to a subordinate is insufficient to show personal

involvement.  See, e.g., Woods v. Goord, 2002 WL 731691,

at *7 (S.D.N.Y. Apr. 23, 2002) (collecting cases).

     Although Hofmann cannot be held liable under

*respondeat superior*, at least one of Griffith's

allegations is that Hofmann himself failed to follow

prison procedure with respect to inmates who have spent

more than 60 days in administrative segregation.  This

allegation of a direct due process violation is

sufficient to keep Hofmann in the case at this time.

Whether or not Griffith's allegation is factually

accurate, and whether it rises to the level of a due

process violation, are matters to be determined on either

a more developed record or through additional briefing.

     With respect to the remaining defendants, as

discussed above, it is not clear that any of the named

defendants were involved in Griffith's medical care.

Presumably, Griffith's amended complaint will clarify

this issue.  Notwithstanding the lack of clarity in

Griffith's current pleadings, however, his claims go

beyond the medical care issue.  Indeed, significant

portions of his complaint and subsequent filings are

devoted to claims of delayed parole and denial of rights

while in extended administrative segregation.  The

defendants have not explained why they cannot be held

liable with respect to these claims.  The motion to

dismiss for lack of personal involvement should,

therefore, be DENIED.

V.   Qualified Immunity

     The defendants' final argument for dismissal is a

claim of qualified immunity.  The doctrine of qualified

immunity protects public officials from liability "if

their actions were objectively reasonable, as evaluated

in the context of legal rules that were 'clearly

established' at the time ."  Poe v. Leonard, 282 F.3d

123, 132 (2d Cir. 2002) (citation omitted).  Before

deciding whether an official is entitled to qualified

immunity, a court should determine whether the alleged

conduct would constitute a violation of constitutional

rights.  See Saucier v. Katz, 533 U.S. 194, 201 (2001);

Poe, 282 F.3d at 132.  When determining whether a

constitutional right was clearly established, the right

must have been "sufficiently clear" that a reasonable

official would have understood that what he did was a

violation of that right.  See Anderson v. Creighton, 483

U.S. 635, 640 (1987); African Trade & Info. Ctr., Inc. v.

Abromaitis, 294 F.3d 355, 360 (2d Cir. 2002).  A right is

clearly established when it is supported by the

decisional law of the Supreme Court or the applicable

circuit court.  Abromaitis, 294 F.3d at 361.

The defendants first argue that Griffith's allegedly

inadequate medical care did not violate clearly

established law.  As discussed above, Griffith should be

granted leave to supplement his medical care claim to

allege (1) that the named defendants were involved in his

care and (2) that this involvement constituted deliberate

indifference to his serious medical needs.  Until

Griffith has so amended his complaint, a qualified

immunity analysis is premature.

The defendants further argue that Griffith's alleged

deprivations of access to the library, the canteen, and

religious services while in administrative segregation

16

did not constitute cruel and unusual punishment.  (Paper

15 at 8).  Cases in which prisoners have challenged the

conditions of administrative segregation are typically

analyzed as due process challenges, and not as challenges

brought under the Eighth Amendment.  See, e.g., Arce v.

Walker, 139 F.3d 329, 333-37 (2d Cir. 1998).  In such

cases, a court must "'identify with specificity the facts

upon which its conclusion is based' in determining

whether a prison restraint constitutes an 'atypical and

significant hardship.'" Id. (citing Brooks v. DiFasi, 112

F.3d 46, 49 (2d Cir. 1997) (district court failed to

consider length of confinement or make findings about

restrictiveness of confinement); (Miller v. Selsky, 111

F.3d 7, 9 (2d Cir. 1997) (rejecting district court's

conclusion that segregated confinement, as a matter of

law, does not create an "atypical and significant

hardship")).  Such specific findings should not be based

merely upon the allegations in a plaintiff's *pro se*

complaint.  See Huminski v. Rutland County, 148 F. Supp.

2d 373, 375 n.1 (D. Vt. 2001) ("the affirmative defense

of qualified immunity generally cannot support a grant of

a Rule 12(b)(6) motion to dismiss because the defense

requires an investigation into the facts and evidence not available at this early stage of the pleadings").  The defendants' motion to dismiss based upon qualified immunity should, therefore, be DENIED as premature.

<u>Conclusion</u>

For the reasons set forth above, the defendants' motion to dismiss (Paper 15) should be GRANTED in part and DENIED in part.  The claims for damages against the defendants in their official capacities should be DISMISSED.  Griffith should be allowed 20 days to amend his complaint with respect to his medication claim, and failure to so amend may result in the dismissal of that claim.  If Griffith files a timely amendment, the defendants may file additional dispositive motions as appropriate.  The defendants' motion to dismiss based upon lack of personal involvement and qualified immunity should be DENIED.

Dated at Burlington, in the District of Vermont, this 9th day of January, 2006.

<u>/S/ Jerome J. Niedermeier</u>
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).