UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Brandon Griffith,               :
          Plaintiff,            :
                                :
     v.                         :     File No. 2:05-CV-126
                                :
Robert Hofmann, Vermont         :
Department of Corrections,      :
Vermont Probation               :
Department, Jay Simons,         :
Deb Thibault, Celeste           :
Girrell, Scott Morley,          :
          Defendants.           :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 46 and 53)

Plaintiff Brandon Griffith, a Vermont inmate proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 claiming that the defendants violated his constitutional rights. Specifically, Griffith alleges that his parole release was wrongfully delayed, that he was given no medication or funds for the days immediately following his release, and that while incarcerated he was placed in administrative segregation and denied basic rights.

The defendants now move for summary judgment on all claims. (Papers 46 and 53). The motions are unopposed. For the reasons set forth below, I recommend that the defendants' motions for summary judgment be GRANTED and

that this case be DISMISSED.

Factual and Procedural Background

Because Griffith has not opposed the defendants'
summary judgment motions, the Court will rely upon his
other filings when ascertaining his version of the facts.
In his initial complaint, Griffith claims that he was
"paroled since 9/21/04" but that "my paperwork was never
filed." (Paper 5 at 5). In a subsequent filing, he
expands on this allegation, stating that "I was granted
parole 9/21/04 . . . . I submitted my address to Head
Caseworker Scott Morley and my paperwork was never filed
. . . . My paperwork was not submitted until 2/4/05."
(Paper 17 at 2). The substance of first this claim
appears to be that Griffith's release on parole was
wrongfully delayed.

Griffith next alleges that he was released in
December 2004 without medication to treat his manic
depression and with "no means of support." (Paper 5 at
5). Griffith claims that he was taking Wellbutrin and
Prozac while incarcerated, and that under "DOC policy you
are suppose[d] to receive a 7 day trial med supply do
[sic] to your release." (Paper 17 at 1). He further

2

explains that upon his release, he had no insurance and no way of obtaining medication during his "re-introduction into society."   Id.

Griffith's third claim is that he was placed in special confinement without due process.  (Paper 5 at 5); (Paper 17 at 3).  While in such confinement, he was allegedly denied access to the law library, the canteen, outside recreation and religious services.  With respect to each of his claims, he alleges that he made efforts to exhaust the prison grievance process but never received an adequate investigation.  (Paper 5 at 2).[1]

On September 8, 2005, the defendants moved to dismiss asserting, *inter alia*, official capacity immunity, lack of personal involvement and qualified immunity.  I subsequently issued a Report and Recommendation recommending dismissal of all claims against the defendants in their official capacities.  I also ruled that Griffith needed to amend his complaint to add factual support for his claim of deliberate

---

[1]  This case is the lead in a two-case consolidation. Griffith brought forth essentially the same claims in the consolidated action.  See Griffith v. Hofmann, File No. 1:06-CV-5.

3

indifference under the Eighth Amendment.  The Court
adopted my Report and Recommendation, and Griffith filed
a timely amended complaint.

On April 18, 2008, the defendants moved for partial
summary judgment with respect to any medical malpractice
claim being brought by the plaintiff.  They followed up
on May 29, 2008 with a motion for summary judgment on all
other claims.  Those motions are currently pending before
the Court.

Discussion

I.  <u>Summary Judgment Standard</u>

Summary judgment should be granted when "there is no
genuine issue as to any material fact, and . . . the
moving party is entitled to a judgment as a matter of
law."  Fed. R. Civ. P. 56(c).  This rule places the
initial burden on the moving party to identify "those
portions of 'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with
the affidavits, if any,' which it believes demonstrate
the absence of a genuine issue of material fact."
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)
(quoting Fed. R. Civ. P. 56(c)).  "A fact is 'material'

4

for these purposes if it 'might affect the outcome of the
suit under the governing law,' and [a]n issue of fact is
'genuine' if 'the evidence is such that a reasonable jury
could return a verdict for the nonmoving party.'"
Goldberg v. Cablevision Sys. Corp., 261 F.3d 318, 324 (2d
Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986)).  In ruling on a motion for summary
judgment "the evidence of the non-movant is to be
believed, and all justifiable inferences are to be drawn
in his favor."  Anderson, 477 U.S. at 255.  It is not the
court's function at summary judgment to make credibility
determinations, weigh evidence, or draw inferences from
the facts.  Id.

To survive a motion for summary judgment, "the
nonmoving party must come forward with 'specific facts
showing that there is a genuine issue for trial.'"
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).
While the submissions of *pro se* litigants are liberally
construed, see, e.g., Burgos v. Hopkins, 14 F.3d 787, 790
(2d Cir. 1994), the fact that the plaintiff is
"proceeding *pro se* does not otherwise relieve him from

5

the usual requirements of summary judgment." <u>Fitzpatrick</u>
<u>v. New York Cornell Hosp.</u>, 2003 WL 102853, at *5
(S.D.N.Y. Jan. 9, 2003); <u>accord</u>, <u>Feurtado v. City of New</u>
<u>York</u>, 337 F. Supp. 2d 593, 596 (S.D.N.Y. 2004) (citing
cases).

II.  <u>Unopposed Motions for Summary Judgment</u>

In <u>Vermont Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373
F.3d 241 (2d Cir. 2004), the Second Circuit held that
"Fed. R. Civ. P. 56, governing summary judgment motions,
does not embrace default judgment principles." <u>Id.</u> at
242.  Thus, "[e]ven when a motion for summary judgment is
unopposed, the district court is not relieved of its duty
to decide whether the movant is entitled to judgment as a
matter of law." <u>Id.</u>  With respect to factual allegations
at summary judgment, a court "must be satisfied that the
citation to evidence in the record supports the
assertion." <u>Id.</u> at 244.

III.  <u>Parole Delay</u>

Griffith claims that his parole paperwork was not
filed in a timely manner, thus delaying his parole.  The
defendants concede that the paperwork may have "fallen
through the cracks."  (Paper 53 at 7).  Nonetheless, they

6

argue that Griffith's constitutional claim fails as a matter of law.

The defendants first argue that Griffith's claim may not be pursued under § 1983 because it implies the invalidity of his confinement.  In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the Supreme Court held that a prisoner may not assert a damages claim under § 1983 where such a claim "attacks the fact or length of the [prisoner's] confinement[,] without first showing that the conviction or sentence has been reversed or otherwise invalidated."  Absent such a showing, a prisoner may only seek relief in federal courts through a petition for habeas corpus.  See Jenkins v. Haubert, 179 F.3d 19, 23 (2d Cir. 1999).

The Heck rule "applies to § 1983 damage actions challenging the fact or duration of parole release [because] . . . the plaintiff is in effect attacking his confinement."  Hill v. Goord, 63 F. Supp. 2d 254, 261 (E.D.N.Y. 1999); see also Mathie v. Dennison, 2007 WL 2351072, at *3 (S.D.N.Y. Aug. 16, 2007).  Here, Griffith contends that the defendants' failure to process his paperwork extended his incarceration in violation of his

7

right to due process.  Because Griffith is attacking the
fact or duration of his confinement, his § 1983 claim is
barred.

The defendants also argue that their alleged conduct
did not rise to the level of a constitutional violation.
According to an affidavit submitted by Scott Morley, a
Security and Operations Supervisor at Griffith's prison
facility, Griffith was approved for parole after
appearing before the Vermont Parole Board on September
21, 2004.  The Parole Board approved him for parole to
New York State subject to New York's acceptance of
responsibility for his supervision.

At the time of the Parole Board's decision, DOC
officials were working to secure a residence for Griffith
so that he could be placed on conditional reentry, "a
type of community supervision distinct from parole."
(Paper 53-5, Morley Aff. at ¶ 4).  He was placed on
conditional reentry on December 14, 2004, but returned on
December 21, 2004 after violating his conditions.

The DOC's earliest record of Griffith inquiring
about the status of his parole to New York is in a
conversation with a caseworker on January 14, 2005.  On

January 20, 2005, a different caseworker contacted the Parole Board for confirmation of its parole decision.  On February 4, 2005, having received confirmation from the Parole Board, Morley submitted a request to New York to supervise Griffith.  New York accepted supervision on June 3, 2005, and Griffith was sent there on June 4, 2005.

The defendants concede that their failure to file paperwork with New York soon after Griffith was approved for out-of-state parole might be characterized as negligence.  However, they argue, negligence is not the equivalent of constitutional harm.

The Supreme Court has held that "injuries inflicted by governmental negligence are not addressed by the United States Constitution."  Daniels v. Williams, 474 U.S. 327, 331-33 (1986) (due process claim); see also Franks v. Delaware, 438 U.S. 154, 171 (1978) ("Allegations of negligence or innocent mistake are insufficient [for a claim under the Fourth Amendment].");  Hankins v. N.Y.S. Dep't of Corr. Servs., 2008 WL 2019655, at *5 n.40 (N.D.N.Y. March 10, 2008) (collecting cases). Here, there is no evidence to suggest that the failure by

DOC officials to process the required paperwork was anything other than carelessness.  While such performance is not inexcusable, it does fall short of a federal constitutional claim.  Accordingly, even assuming that Griffith could bring his parole-related claim under § 1983, his claim should be DISMISSED as insufficient.

IV.  <u>Special Confinement</u>

Griffith brings a series of claims with respect to his placement in administrative segregation and other forms of special confinement.[2]  He first contends that on August 15, 2005, he was placed in segregation pending hearing on a "Major A3" infraction.  On August 22, 2005, he was allegedly found guilty on a lesser "B21" charge and sentenced to four days in segregation.

After release from segregation, Griffith was placed in "close custody."  He claims that he tried to file a "rebuttal" to the "B21" conviction, but was told there was no need since the matter had been scheduled for a re-hearing.  His complaint alleges that no re-hearing was ever held.  On August 29, 2005, prison officials

---

[2]  Griffith's more detailed allegations on this point are set forth in the now-consolidated complaint in File No. 1:06-CV-5.

allegedly rescheduled a hearing for a stealing infraction, but that hearing was not held either. Griffith claims that he ultimately spent 28 days in close custody.

The defendants confirm that in August 2005, Griffith was "charged with a number of disciplinary violations, including a Major A#3 that was ultimately dismissed.  He was convicted of 2 major disciplinary violations." (Paper 53-4, Morley Aff. at ¶ 13).  It is also undisputed that Griffith spent four days in administrative segregation.  (Paper 53 at 13).  The question presented with respect to this time period is whether the alleged confinements violated Griffith's constitutional rights.

Griffith asserts that his periods of special confinement violated his right to due process.  To succeed on a due process claim under the Fourteenth Amendment, he must establish (1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient process. Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation omitted).  To determine whether a prisoner has identified a protected liberty interest, the

11

Court must examine whether the State has created such an interest by statute or regulation and whether the alleged deprivation constitutes an atypical and significant hardship.  Sandin v. Connor, 515 U.S. 472, 484 (1995); Iqbal v. Hasty, 490 F.3d 143, 161 (2d Cir. 2007) (quoting Tellier v. Fields, 280 F.3d 69, 80 (2d Cir. 2000)).

Standing alone, Griffith's four days in administrative segregation was not an atypical and significant hardship.  The facts at summary judgment show that he was convicted of at least two major offenses, thus justifying special confinement.  The record also demonstrates that administrative segregation permits one hour of out-of-cell recreation per day, access to legal materials, access to medical care, and three meals per day.  (Paper 53-3, Martinson Aff. at ¶ 9).  Many courts in this Circuit have held that significantly longer periods of time in this sort of confinement do not violate the Constitution.  See Sealey v. Giltner, 197 F.3d 578, 589-90 (2d Cir. 1999) (101 days of disciplinary confinement in special housing unit was not atypical or

significant hardship)[3]; Husbands v. McClellan, 990 F.
Supp. 214, 217-19 (W.D.N.Y. 1998) (180 days in S.H.U. not
atypical and significant in relation to ordinary
incidents of prison life); Warren v. Irvin, 985 F. Supp.
350, 353-56 (W.D.N.Y. 1997) (161 days in S.H.U. under
conditions of confinement that were more restrictive than
those in general population).  Accordingly, the Court
should find that Griffith's four days in administrative
segregation did not implicate a liberty interest.

Close custody is less restrictive than
administrative segregation.  When a Vermont inmate is in
close custody, he is allowed two hours of recreation time
per day, with an additional 45 minutes every other day.
(Paper 53-3, Martinson Aff. at ¶ 11).  He may call
attorneys during regular work hours, call non-attorneys
during recreation hours, and access legal materials upon
request.  The inmate may also access educational and
religious programs, may shower during recreation time,

_____

[3]  The conditions of special housing unit ("S.H.U.")
confinement in New York were described in Colon v.
Howard, 215 F.3d 227, 230 (2d Cir. 2000) as confinement
in the cell for 23 hours per day, exercise one hour per
day, two showers per week, and limited book and visitor
privileges.

and has commissary privileges.  Id.  In light of these conditions, and the case law cited above, the Court should find that Griffith's 28 days in close custody did not implicate a liberty interest.

Griffith next complains about procedures relating to an incident in September 2005.  His complaints include failure to produce a witness at the hearing, and a loss of credit for "early lock-in."  His punishment was another four days in segregation.  Again, this short period of time in segregation did not result in an atypical and significant hardship, and therefore did not violate Griffith's rights.

In November 2005, Griffith was disciplined for throwing a chair at a corrections officer and threatening to kill him. (Paper 55-12 at 3).  A hearing was held, the evidence was found to be sufficient, and Griffith was sentenced to 12 days of disciplinary segregation.[4]  Id. at 1-4.  Griffith appealed, and the decision was upheld. Id. at 17-20.  He was subsequently placed in

---

[4] Disciplinary segregation is slightly more restrictive than administrative segregation, with a maximum of five hours of recreation per week.  (Paper 53-3, Martinson Aff. at ¶ 8).

14

administrative segregation.

Griffith claims that immediately after this
incident, he was kept in "4-point restraints" and not
allowed to shower for seven days. (File No. 1:06-CV-5,
Paper 5 at 7). He also contends that his hearing was
flawed, his administrative segregation review was
delayed, and his denial of access to religious services
and "canteen" violated his rights. Id.

On the issue of Griffith's level of restraint
immediately after the incident, courts have held that
"temporary deprivations of property, showers and
recreation do not violate the Eighth Amendment." Ford v.
Phillips, 2007 WL 946703, at *9 (S.D.N.Y. March 27, 2007)
(collecting cases); see Freeman v. Goord, 2005 WL
3333465, at *9 (S.D.N.Y. Dec. 7, 2005). With respect to
his placement in administrative segregation, Griffith was
provided a hearing at the outset, and reviews at 15 and
30 days as required under DOC regulations. Id. at 21-37.
In his 30-day review, the hearing officer noted that
Griffith had been convicted of 54 disciplinary offenses,
14 of which were major, two of which were for assault,
and one of which was an assault on staff. Id. at 37.

15

Based upon these facts, the hearing officer found that Griffith "presents a danger to staff and inmates" and recommended continued segregation.  Id.  Because Griffith received the appropriate hearings, and the evidence appears to have met the standard required for discipline, see Superintendent v. Hill, 472 U.S. 445, 455-56 (1985), I see no basis for granting relief for due process claims arising out of the November 2005 incident.

Griffith's final segregation-related claim, set forth in the earlier of the two consolidated complaints (File No. 2:05-CV-126, Paper 5), is that he was placed in segregation between January 22, 2005 and April 25, 2005. The defendants concede that he was in some form of segregation for much of this time, but submit that segregation was justified by a litany of disciplinary offenses.  Specifically, Griffith was convicted on fourteen major Disciplinary Reports between January and April 2005.  (Paper 53-6 at 3-5).  He does not claim that he was denied due process with respect to his punishment for any of these offenses.  Moreover, the record clearly shows that he received notices and hearings, and that findings were supported by the evidence presented.

(Papers 53-10 and 53-11).

In all, Griffith was in administrative segregation for over 100 days in 2005.  The Second Circuit recently held that aggregate periods of segregation in excess of 101 days "require a district court to articulate specific findings of the conditions of the imposed confinement relative to ordinary prison conditions before determining whether such confinement is atypical."  Reynoso v. Selsky, 2008 WL 4162921, at *2 (2d Cir. Sept. 10, 2008) (citing Palmer, 364 F.3d at 64-65).  This case presents a plaintiff who had numerous disciplinary problems over a several month period.  In each instance, he appears to have received the process that was due, and his placement in segregation was not so extended as to violate his constitutional rights.  Even in the aggregate, and considering the specific restrictions placed upon inmates while in administrative segregation, the evidence does not support a finding of a constitutional violation. See, e.g., Husbands, 990 F. Supp. at 217-19 (180 days in S.H.U.); Warren, 985 F. Supp. at 353-56 (161 days in S.H.U.).  For these reasons, I recommend that Griffith's due process claims be DISMISSED.

17

V.   <u>Ramadan Claim</u>

Also in 2005, Griffith was allegedly denied hot and timely meals during Ramadan.  (File No. 1:06-CV-5, Paper 5 at 7).  The summary judgment record shows that Griffith complained about his meals during Ramadan, suggesting that they were smaller than usual and cold.  An investigation showed that the meals were religiously appropriate, and the kitchen staff was instructed to try to deliver the meals warm.  (Paper 53-3, Martinson Aff. at 3).

Although Griffith does not set forth a legal basis for his Ramadan claim, the claim might conceivably be brought under either the First Amendment's Free Exercise Clause or the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  <u>See</u>, <u>e.g.</u>, <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 199 n.2 (2d Cir. 2004) (considering RLUIPA claim though not raised in complaint).  Courts have held that, under both the First Amendment and the RLUIPA analyses, a prisoner must demonstrate that "the disputed conduct substantially burdens his sincerely held religious beliefs." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 274-75 (2d Cir. 2006)

(citing RLUIPA, 42 U.S.C. § 2000cc-1(a), and <u>Ford v.</u>
<u>McGinnis</u>, 352 F.3d 582, 587 (2d Cir. 2003) (discussing
requirements of First Amendment Free Exercise Clause)).

Here, there is no dispute that Griffith received
meals that were in keeping with his religion.  He has
made no showing that either portion size or food
temperature is a requisite part of a Ramadan meal.
Accordingly, the Court should find that his religious
practice was not "substantially burdened," and should
DISMISS his Ramadan claim.  <u>See</u> <u>McEachin</u>, 357 F.3d at 203
n.6 ("There may be inconveniences [regarding denials of
religiously required food] so trivial that they are most
properly ignored.  In this respect, this area of the law
is no different from many others in which the
time-honored maxim '*de minimis non curat lex*' applies.").

VI.  <u>Conditional Re-Entry</u>

Griffith further claims that he was wrongfully
denied conditional re-entry furlough.  The defendants
respond that Griffith has no liberty interest in
furlough.  Indeed, it is clear from Vermont's furlough
statute that the granting of furlough is entirely
discretionary.  <u>See</u> 28 V.S.A. § 808; <u>Parker v. Gorczyk</u>,

170 Vt. 263, 268 (1999); Conway v. Cumming, 161 Vt. 113, 118 (1991) (§ 808(a) contains "no limitations on the discretionary authority granted to the Commissioner"). The statute reads, in relevant part: "The department may extend the limits of the place of confinement of an inmate at any correctional facility if the inmate agrees to comply with such conditions of supervision the department, in its sole discretion, deems appropriate for that inmate's furlough."  28 V.S.A. § 808(a).  Given that the DOC has unbridled discretion with respect to each furlough applicant, it cannot be argued that Griffith had a legitimate expectation of release entitling him to due process protection.  See, e.g., Olim v. Wakinekona, 461 U.S. 238, 249 (1983).

VII.  Medical Care Claim

     Finally, the defendants move for summary judgment on Griffith's claim of constitutionally inadequate medical care.  Griffith claims that a nurse failed to give him medications when he was released, and that he may suffer long-term consequences as a result of not having taken his medications for seven days.

     The defendants argue that Griffith's claim must

fail, in part, because he has not offered any expert
testimony "on the questions of the standard of care
and/or causation."  This argument is misplaced.
Construing Griffith's complaint as raising an Eighth
Amendment claim, rather than a state law medical
malpractice claim, the standard is deliberate
indifference to serious medical needs.  See Estelle v.
Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511
U.S. 825, 828 (1994).  The quality of Griffith's medical
care is not the primary issue, and no expert testimony is
required.  See Olivier v. Robert L. Yeager Mental Health
Ctr., 398 F.3d 183, 191 n. 7 (2d Cir. 2005); Hathaway v.
Coughlin, 37 F.3d 63, 68 (2d Cir.1994).

What is required, as just noted, is a showing of
deliberate indifference to serious medical needs.  The
defendants argue that Griffith has failed to show that "a
serious medical condition was involved."  (Paper 46 at
5).  Griffith was on medication for mental health issues.
The Second Circuit has held that psychiatric conditions
can undoubtedly pose a risk of serious harm.  See Cuoco
v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000).  In this
case, however, Griffith has failed to proffer any

evidence to show that depriving him of his medications for a period of days posed a substantial risk of such serious harm.  <u>See</u> <u>Smith v. Carpenter</u>, 316 F.3d 178, 185 (2d Cir. 2003) (although plaintiff suffered from HIV, "he presented no evidence that the two alleged episodes of missed medication resulted in permanent or on-going harm to his health"); <u>Hill v. Dekalb Regional Youth Detention Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.").  At most, he claims that he lost focus and suffered physical symptoms of withdrawal.  (Paper 46-2, Griffith Dep. at 29-30).  As to any long-term harm, he is only able to speculate.  <u>Id.</u> at 30.

Furthermore, there is no indication of deliberate indifference in the record.  Griffith's deposition testimony states that, on the date of his release from prison, he and his case worker informed a nurse that he was being released.  <u>Id.</u> at 24.  When it came time for him to leave the prison, he inquired about his

22

medications and "[t]hey're like, well, we don't know.
It's time for you to go." Id.  Whether the releasing
staff members knew of Griffith's condition, knew the
importance of his medication, or knew with any certainty
of a risk of serious harm has not been established.
Absent any evidence a "conscious disregard of a
substantial risk of serious harm," Hathaway, 99 F.3d at
553, the defendants are entitled to judgment on this
issue as a matter of law.

### Conclusion

     For the reasons set forth above, I recommend that
the defendants' motions for summary judgment (Papers 46
and 53) be GRANTED and this case be DISMISSED.

     Dated at Burlington, in the District of Vermont,
this 1st day of October, 2008.


                              /s/ Jerome J. Niedermeier
                              Jerome J. Niedermeier
                              United States Magistrate Judge


Any party may object to this Report and Recommendation
within 10 days after service by filing with the clerk of
the court and serving on the magistrate judge and all
parties, written objections which shall specifically
identify the portions of the proposed findings,
recommendations or report to which objection is made and
the basis for such objections.  Failure to file

objections within the specified time waives the right to
appeal the District Court's order.  See Local Rules 72.1,
72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b),
6(a) and 6(e).